# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:10-CR-9-FDW-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | ORDER |
| MICHAEL MAXWELL MACCONNELL, ) | |
| Defendant. ) | |

THIS MATTER comes now before the Court on Defendant's Motion to Suppress Evidence (Doc. No. 7), the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 12) recommending that Defendant's motion be denied, and Defendant's Objection to Memorandum and Recommendation. (Doc. No. 14). The Government did not respond to Defendant's objections, and the time for doing so has expired. After reviewing the briefs, testimony and evidence presented before the Magistrate Judge, as well as the relevant case law, the Court OVERRULES Defendant's objections, ADOPTS the M&R's recommendation, and DENIES Defendant's pending motion.

## I. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider *de novo* any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3).

## II. BACKGROUND

Defendant has been charged by Bill of Indictment with knowingly and intentionally manufacturing and possessing with intent to distribute a controlled substance (marijuana) in

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and knowingly using and maintaining a place, a residence located at 11116 Lawyers Road, Mint Hill, North Carolina, for the purpose of manufacturing a controlled substance (marijuana) in violation of 21 U.S.C. § 856(a)(1). (Doc. No. 1).

Sergeant Jeff Grimes testified that he encountered Defendant on October 27, 2009, outside the police station in Mint Hill, North Carolina. Defendant was bleeding and lying on the ground. Grimes called for medical attention, who treated Defendant for his injuries. Defendant, however, refused to be transported to the hospital for further attention against the recommendation of emergency personnel. Grimes subsequently obtained a statement from Defendant, which revealed Defendant had been assaulted in the back yard of his home. Grimes suggested he accompany Defendant back to the home to make sure the intruders were no longer present. Defendant initially resisted such assistance but ultimately agreed that Grimes could accompany him and search the house. Upon Grimes' arrival to Defendant's residence and while still on the front porch of the house, Grimes noticed a strong odor of marijuana emanating from inside the home. When Grimes entered, he described the smell of marijuana as "just about to knock you over – it was really strong." Once inside, Grimes observed in plain view, among other things, a bong pipe on a tray with apparent drug residue, numerous magazines addressing how to grow marijuana, and multiple stacks of mason jars. After Grimes and Defendant were inside the house for a short time, Defendant stated, "aren't we about done here," and the search concluded shortly thereafter.

Grimes subsequently obtained a search warrant based on his observations of drug paraphernalia and the smell of marijuana. Defendant does not challenge the probable cause for the search warrant but instead contests the initial search that formed the basis for the probable cause used to issue the search warrant. Defendant, through counsel, filed his Motion to Suppress Evidence

(Doc. No. 7), and the Magistrate Judge held an evidentiary hearing on May 27, 2010. At the hearing, the Government called one witness, Sergeant Grimes, and Defendant took the stand in his own defense. After the M&R was issued on June 14, 2010 (Doc. No. 12), Defendant timely filed his Objection to Memorandum and Recommendation (Doc. No. 14). The Court has carefully reviewed the record, including listening to the recording of the suppression hearing and examining Grimes' search warrant affidavit filed with Defendant's motion as Defendant's Exhibit A. (Doc. No. 7-1).

### III. DISCUSSION

Defendant offers ten specific objections to the findings contained in the M&R, and those objections are reviewed *de novo*. After conducting a careful review of the M&R, the Court finds no error in, summarily agrees with, and adopts those portions of the M&R to which no objection was raised. The Court now turns to Defendant's specific objections.

**A.      Credibility Determination**

Many of Defendant's objections challenge the M&R's attribution of greater weight and credibility to Grimes' testimony than Defendant's.[1] In addressing these objections, the Court notes that a reviewing court must take a deferential standard regarding the credibility of witnesses where the Magistrate Judge sits as a trier of fact.[2] See United States v. Brooks, No. 1:05CR248-1, 2006 U.S. Dist. LEXIS 25626, at *3-4 (W.D.N.C. March 15, 2006); McNairn v. Sullivan, 929 F.2d 974,

---

[1] The Court finds that, out of the ten objections raised by Defendant, objections one, two, four, five, six, and eight pertain solely to the finding that Grimes was more credible than Defendant.

[2] Defendant's specific factual objection to the finding that errors in Grimes' search warrant affidavit were those of an "honest officer of limited experience" is that Grimes identified himself in the affidavit as an officer with sixteen years of law enforcement experience. In carefully reviewing the hearing transcript, the Court sees no inconsistency between the M&R's finding and Grimes' testimony that he had little experience *with completing search warrant affidavits*.

977 n.3 (4th Cir. 1991); United States v. Stoots, No. 97-4038, 1997 U.S. App. LEXIS 32787, at *2 (4th Cir. Nov. 20, 1997) (unpublished table decision).

Defendant suggests the M&R ignored factual discrepancies between Grimes' testimony and his sworn search warrant affidavit, which ultimately resulted in the seizure of the contraband and currency Defendant now seeks to suppress. Defendant argues that because material details of Grimes' testimony were absent from the affidavit, his testimony was inherently incredible. However, the M&R specifically indicates Grimes' admission of errors committed in preparation of the search warrant affidavit and in other aspects of his police duties enhanced, rather than undermined, his credibility.[3] The M&R also found Defendant's testimony hyperbolic and exaggerated. Upon review of the recording of the hearing, the Court agrees with the M&R's characterization and notes that Defendant's testimony frequently veered toward editorial commentary outside the scope of questioning.[4]

For these reasons, the Court overrules Defendant's objections to the M&R's credibility determination.

**B.   Valid Consent**

Defendant's third, seventh, and ninth objections argue Defendant did not voluntarily consent to Grimes' initial search of his home following the violent assault on the premises earlier that night. Defendant claims: (1) Grimes did not treat Defendant as a crime victim, but as a suspect; (2)

---

[3]For example, Grimes testified that it "probably wasn't the best idea" to permit Defendant, who had earlier repelled a violent attack by four assailants outside his residence, to accompany him when, with Defendant's consent, Grimes entered the house to make sure it was "cleared." Grimes also readily admitted Defendant was dissatisfied with the victim statement he prepared on Defendant's behalf following the assault.

[4]Examples include Defendant's statement that Grimes' "powers of observation are quite suspect," his conclusion that his assailant was "someone who doesn't know me," and his self-serving assertion that, during police questioning following the assault, "in my opinion I was in police custody at that time."

4

Defendant was held against his will in an "interrogation room" at the Mint Hill police station until he agreed to allow Grimes to escort him back into his home; and (3) Defendant, therefore, did not give lawful consent to Grimes' ensuing entry and brief search of the residence.

Under the Fourth Amendment to the Constitution, "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). "A search authorized by consent is wholly valid." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Yet, "when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth . . . Amendment[] require[s] that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." Id. at 248. Whether consent is voluntary "is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id. at 248-49.

Here, the M&R made a factual determination that Defendant gave a lawful and voluntary consent to Grimes' search of his residence. The parties do not dispute that Defendant essentially called Grimes' search to a halt—refusing to let Grimes enter certain rooms, which Defendant checked by himself. Grimes limited the search to a reasonable look around the premises in light of his previously stated purpose of "clearing" the property for Defendant's safe return.

Nothing in the record inherently suggest Defendant's consent was involuntary. Yet, because Defendant argues he was in fact "in custody" prior to the search, a brief analysis of this legal question is in order. Whether a subject is "in custody" depends, first, on "the circumstances

surrounding [an] interrogation," and second, whether or not a reasonable person in these circumstances would have felt free to leave. Thompson v. Keohane, 516 U.S. 99, 113 (1995).

The Court rejects the assertion that Defendant was, at any time, under interrogation. In assisting Defendant as a victim, Grimes first called Medic, who arrived and treated Defendant's injuries from the assault. When Defendant refused ambulance transport to the hospital for additional treatment, Grimes asked him to move from the street in front of the small Mint Hill police department into a conference room just inside for the purpose of preparing a victim statement.[5] Defendant does not assert that Grimes physically restrained or confined him, nor that he expressed to Grimes any desire to discontinue the interview, only that he "felt" he could not leave without complying with Grimes' "order." Yet, Defendant's subjective perception, while a factor to be considered, is not determinative of whether he was actually in custody. Schneckloth, 412 U.S. at 227. Although Defendant now apparently regrets agreeing to let Grimes enter his home, his remorse after the fact does not invalidate the initial consent. United States v. Mendenhall, 446 U.S. 544, 555-56 (1980) ("It may happen that a person makes statements to law enforcement officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntarily.").

The Court has already found Grimes' testimony to be more credible than Defendant. Grimes testified that he had no reason to suspect Defendant of any crime during the interview following the assault. He further testified he wished to clear Defendant's home to ensure that Defendant could safely return there. Considering Defendant's own testimony that his assailants intended to enter his

---

[5]Defendant testified that his impatience with Grimes during the interview was due to his desire to go home, clean the dried blood off himself, and drive himself to the hospital, despite his prior refusal to accept Medic transport.

6

residence, it was not unreasonable for Grimes to urge Defendant to return only with law enforcement in tow, and it arguably would have constituted a derogation of duty for him not to at least attempt to persuade Defendant to accept such protection.

The Court, therefore, agrees with the M&R that under the totality of the circumstances, Grimes' cursory search of Defendant's residence on the night of the assault was consensual and overrules Defendant's objections three, seven, and nine. The M&R properly concluded that Defendant, after being treated as the victim of an assault, gave a lawful oral consent to have Grimes search his house to ensure no intruders remained inside. Once lawfully inside the home, though not there investigating Defendant, Grimes observed obvious contraband, which then formed the basis of the search warrant affidavit.

**C.  No Fourth Amendment Violation**

Citing Wong Sun v. United States, Defendant argues the evidence seized pursuant to the search warrant prepared with Grimes' affidavit should be suppressed as "fruit of the poisonous tree." 371 U.S. 471, 488 (1963). However, having found that Grimes' initial search was lawful and did not violate Defendant's Fourth Amendment rights, the Court holds that the 'plain view' doctrine supports the probable cause on which the warrant was issued and the evidence subsequently seized. See Texas v. Brown, 460 U.S. 730, 738 (1983). Therefore, the Court overrules Defendant's tenth and final objection.

**IV. Conclusion**

For these reasons, the Court concludes that the M&R's findings are supported by the record and the conclusions of law are consistent with current case law. Accordingly, the Court OVERRULES all Defendant's objections and ACCEPTS and ADOPTS the M&R's recommendation that Defendant's Motion to Suppress Evidence (Doc. No. 7) be DENIED.

IT IS SO ORDERED.

Signed: August 24, 2010

Frank D. Whitney
United States District Judge